UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ROBBIN STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | No. 1:06-cv-923-SEB-JMS |
| ) | |
| CORRECTIONS CORPORATION OF ) | |
| AMERICA (CCA), et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motion for Summary Judgment**

This cause is before the court on the defendants' motion for summary judgment and on the evidentiary record pertaining to the motion for summary judgment.

For the reasons explained in this Entry, the motion for summary judgment must be **granted.**

**Background**

**A.  Parties and Procedural Posture**

As used in this Entry, "Stewart" refers to plaintiff Robbin Stewart, "Jail" refers to the Marion County Jail II, and "defendants" refers to the Corrections Corporation of America ("CCA"), the Warden of the Marion County Jail Annex, and Officer Zeiss.

The defendants seek resolution of a portion of the claim in this action through the entry of summary judgment.[1] Stewart has not responded to that motion, and time for him to have done so has expired. The consequence of this is that the factual assertions on which the defendants' motion for summary judgment supported by the evidentiary record are accepted as true for the purpose of resolving that motion. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This is the result of Local Rule 56.1(h), of which the plaintiff was notified.

---

[1] "Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the *Federal Rules of Civil Procedure*). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

**B. Claims**

Certain claims in this case were dismissed at the outset as legally insufficient pursuant to 28 U.S.C. § 1915A. The claims which remain are those associated with Stewart's treatment and the conditions of his confinement at the Jail.

**C. Undisputed Material Facts**

The undisputed material facts, for purposes of resolving the defendants' motion for summary judgment, are the following:

Stewart was confined at the Jail which was from May 19, 2004, to June 9, 2004. The present action was filed on June 13, 2006. Warden Conway assumed his position at the Jail in July 2006, and prior to that time had no personal role in the operation of the Jail.

The policies at the Jail in effect at the time of Stewart's confinement there, insofar as pertinent to Stewart's claims in this case, were the following:

(a) Special diets for inmates whose religious beliefs require the adherence to religious dietary laws were permitted when such a diet was approved by the Jail Chaplain.

(b) If an inmate requested pharmaceuticals for some purpose, such as treatment for depression or pain, and a doctor determined that a clinical necessity exists for prescribing such medication, the medication was made available to the inmate.

(c) Attendance at sick call could be requested by an inmate by the inmate filling out a medical request slip and placing the slip in one of several secured drop boxes which were regularly checked by medical personnel.

(d) Inmates requesting medical treatment were brought to the medical department for evaluation and treatment.

(e) The Jail had a number of televisions. These were placed in cages, such that inmates were prevented from changing the channels or the volume level. These televisions were turned off at 11:00 pm on weeknights and at midnight on weekends.

(f) The Jail maintained a law library to which inmates had access. Access to the law library was available to inmates during regular library hours or beyond the hours regularly scheduled if the inmate demonstrated the need for additional time.

(g) An inmate's attorney could visit the inmate at the Jail seven days a week, from 7:00 am to 9:00 pm. There was no time limitation placed on these attorney visits by the Jail. In addition, attorney visits beyond 9:00 pm were permitted if the attorney represented it was necessary. An inmate could also contact his or her attorney by telephone.

(h) An inmate at the Jail was permitted to have contact visitation. Visitors were permitted if designated by an inmate as a visitor, and not subject to exclusion based on the Jail's effort to maintain the safety and security of the Jail.

(i) Inmates had access to and could communicate with the media, subject to approval.

(j) The Jail had particular procedures in place to determine, when an inmate was to be released, that the person presenting himself or herself for release was the actual person whose release was authorized.

(k) The Jail's policy regarding lost inmate property claims provided that inmates could complete a lost personal property claim form and submit the form to the Jail's designated property officer. The Jail's property officer would assign the claim a number and would conduct an investigation. If the investigation found in favor of the inmate, it would proceed to the warden who would authorize the reimbursement. If the investigation did not find any merit to the claim, it would be denied.

Stewart was a pretrial detainee while confined at the Jail. His release may have been delayed a portion of one day passed the day he was scheduled to be released, though if this occurred it was because Stewart would not cooperate in verifying his identity.

## Discussion

Stewart's claims are asserted pursuant to 42 U.S.C. § 1983 and pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA). 42 U.S.C. § 2000cc-1. He also asserts claims directly under the Indiana Constitution.

The defendants are entitled to summary judgment as to the § 1983 claim for these reasons: *First,* the action after the expiration of the 2-year statute of limitations (filed more than 2 years after Stewart had been released from the Jail). *Second,* Warden Conway was not personally involved in any of the incidents described in the complaint. *Third,* the CCA could not be liable under § 1983 in the absence of a custom or policy violative of federal law–which has not been alleged or shown. *Fourth,* that even if Stewart's release was a day later than scheduled, his refusal to comply with the Jail's procedures to verify his identity account for that delay. *Fifth,* Stewart had meaningful remedies under Indiana law if his property was wrongfully kept or disposed of. *Sixth,* Stewart has shown no detriment or injury, legal or otherwise, associated with the claims in his complaint.

The RLUIPA prohibits the government from imposing a "substantial burden" on a prisoner's "exercise" of his religion, but in contrast to the Free Exercise Clause, RLUIPA defines religious "exercise" broadly to include practices that are not central to, or compelled by, one's religion. *See Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 766 (7th Cir. 2003). Stewart's RLUIPA claim fails, however, because CCA's policy allows for vegetarian meals to satisfy religious requirements, because his request for a vegetarian diet was approved by the Jail's Chaplain and submitted to the former warden on June 8,

3

2004, but was not acted upon because Stewart was released from the Jail the following day, June 9, 2004. Accordingly, the undisputed evidence establishes that Stewart's request for a vegetarian diet was not denied by the warden as he alleges. Filling out the request did not impose a substantial burden on Stewart's exercise of his religion. Not obtaining final approval of the request on the same day it was submitted to the Jail's warden likewise did not impose a substantial burden on Stewart's exercise of his religion.

The foregoing discussion is responsive to Stewart's federal claims. As noted, however, Stewart also asserts claims under Indiana state law. When a district court dismisses the claims over which it had original jurisdiction, it has discretion either to retain jurisdiction over the supplemental claims or to dismiss them. 28 U.S.C. § 1367(c)(3); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 717 (7th Cir.), *cert. denied,* 119 S. Ct. 167 (1998); *Wright v. Associated Insurance Cos., Inc.,* 29 F.3d 1244, 1250 (7th Cir. 1994).

"[W]hen deciding to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ.,* 484 U.S. at 350). The retention of jurisdiction over the pendent state law claims is permissible under 28 U.S.C. § 1367(a). The retention of such jurisdiction is appropriate in this case. *Lawrence v. Kenosha County,* 391 F.3d 837, 844 (7th Cir. 2004); *see also Grove v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999) (district court did not abuse discretion in retaining jurisdiction over supplemental state claims for reasons of judicial economy); *Sullivan v. Conway,* 157 F.3d 1092, 1095 (7th Cir. 1998) (federal-state comity not furthered by sending "doomed litigation . . . back to the state court to be dismissed there."); *Van Harken v. City of Chicago,* 103 F.3d 1346, 1354 (7th Cir. 1997) (where "an interpretation of state law that knocks out the plaintiff's state claim is obviously correct, the federal judge should put the plaintiff out of his misery then and there, rather than burdening the state courts with a frivolous case").

No claim under the Indiana Constitution can be maintained under the circumstances identified by Stewart, because the persuasive authority is that there is no private cause of action for damages under the Indiana Constitution. *See Estate of O'Bryan v. Town of Sellersburg,* 2004 WL 1234215 at *21 (S.D.Ind. May 20, 2004); *Malone v. Becher*, 2003 WL 22080737 at *18 (S.D.Ind. Aug. 29, 2003) (Indiana Supreme Court has not recognized an implied right of action for damages under Article 1, sections 15 and 16); *Boczar v. Kingen,* 2000 WL 1137713 at *24-25 (S.D.Ind. March 9, 2000); *Ratliff v. Cohn*, 693 N.E.2d 530, 542 (Ind. 1998) ("particularized, individual applications are not reviewable under Article 1, Section 18 because Section 18 applies to the penal code *as a whole* and does not protect fact-specific challenges.") (emphasis in original); *Bailey v. Washington Theater Co.,* 34 N.E.2d 17, 19-20 (Ind. 1941).

### Conclusion

"Summary judgment is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgment must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994), *aff'd*, 115 S. Ct. 2151 (1995). Therefore, the motion for summary judgment is **granted,** and judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 07/19/2007

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana